United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>Defendant. | Case No.  13-cv-01014-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 34, 38 |

## I.      INTRODUCTION

On January 31, 2013, Plaintiff Columbia Casualty Company ("Plaintiff" or "Columbia") brought this action against Defendant Federal Insurance Company ("Defendant" or "Federal") in Contra Costa County Superior Court, seeking declaratory relief and alleging causes of action for equitable indemnity, equitable contribution, and equitable subrogation.  Compl., Dkt. No. 1.  The case was removed to this Court on March 6, 2013 under 28 U.S.C. § 1441.

Presently before the Court are Plaintiff's motion for summary judgment and Defendant's motion for summary judgment or, in the alternative, partial summary judgment as to all causes of action.  Having considered the arguments made by the parties in their papers and at the hearing held on April 23, 2015, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion for the reasons explained below.

## II.      BACKGROUND

This insurance coverage dispute arises out of a Texas premises liability/wrongful death lawsuit (the "*Perez* Action") in which the heirs of Maria Leyva Perez alleged that lax security at Solana Ridge, her apartment complex in Dallas, led to her death.  Joint Appendix ("J.A.") Ex. 6, Dkt. No. 36.  In the *Perez* Action, Ms. Perez's heirs sued Solana Ridge, owned by CRP/TBG Diamond Ridge, LP, a subsidiary of the Bascom Group, LLC ("Bascom"); the apartment manager,

Greystar Partners, L.P. ("Greystar"); and Ms. Johanna Rodriguez, former manager and employee of Greystar. Each of the entity defendants carried insurance policies which covered its defense, and ultimately covered the settlement of the *Perez* Action in February 2012 for $2 million. *See* J.A., Ex. 11 ¶ 12. The various insurers, insureds, and policies are as follows:

| Insurer | Insured |
|---|---|
| **Columbia Casualty Corp.** – Commercial General Liability ("CGL")<br><br>**Policy Limits**<br>$1 Million per occurrence<br>$3 Million aggregate<br><br>**Self-Insured Retention**<br>$100,000<br><br>J.A., Ex. 1 | **Named Insured:** Greystar Real Estate (Solana Ridge Management Company)<br><br>**Additional Insured:** CRP/TBG Diamond Ridge, L.P. (Owners, Solana Ridge Apartments)<br><br>J.A., Ex. 1 |
| **Fireman's Fund Insurance Co.** – CGL<br><br>**Policy Limits**<br>$1 Million per occurrence<br>$2 Million aggregate<br><br>J.A., Ex. 3 | **Named Insured:** Bascom Group/CRP/TBG Diamond Ridge, L.P.<br><br>**Additional Insured:** Greystar Real Estate Partners<br><br>J.A., Ex. 3 |
| **Federal Insurance Co. (Chubb Policy)** – Commercial Excess and Umbrella Insurance<br><br>**Policy Limits**<br>$25 Million per occurrence<br>$25 Million aggregate<br><br>J.A., Ex. 2 | **Named Insured:** Bascom Group/CRP/TBG Diamond Ridge, L.P.<br><br>**Additional Insured:** Greystar Real Estate Partners (Manager)<br><br>J.A., Ex. 2. |

Under the *Perez* settlement agreement and the respective insurance agreements, Fireman's Fund Insurance Co. ("Fireman's Fund") contributed its policy limit of $1 million to the settlement. Greystar, Columbia's insured, paid its self-insured retention fee of $100,000 to Columbia, and Columbia, in turn, contributed $900,000 to the settlement. J.A., Ex. 11 ¶ 12. These sums served to cover the entire $2 million settlement amount, with the result that Federal did not contribute to the settlement.

Columbia then filed the instant suit against Federal to recover all or part of the $900,000 it contributed to the *Perez* settlement, under several theories. Primarily, Columbia asserts that the

1    Federal policy is not a "true excess" policy, but instead is a "follow-form" policy that is excess to

2    the Fireman's Fund policy only.  Columbia Motion at 5 ("Col. Mot.").  For this reason, Columbia

3    argues Federal should have contributed to the *Perez* settlement as soon as the Fireman's Fund

4    limit ($1 million) was exhausted.  In the alternative, Columbia alleges that it is entitled to recoup

5    the $900,000, or a portion of it, under theories of: (1) equitable indemnity (Second Cause of

6    Action), (2) equitable contribution (Third Cause of Action), and (3) equitable subrogation (Fourth

7    Cause of Action).

8         Both parties have moved for summary judgment on Columbia's First Cause of Action,

9    which seeks a judicial determination that Federal must reimburse Columbia, in whole or in part,

10   for its $900,000 settlement payment.   In addition, Federal has moved for summary judgment or

11   partial summary judgment on Columbia's remaining causes of action.

12   **III.    LEGAL STANDARD**

13        Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the

14   "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

15   affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

16   party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Only genuine disputes

17   over material facts will preclude summary judgment; "factual disputes that are irrelevant or

18   unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

19   Material facts are those that may affect the outcome of the case. *Id.*  A dispute as to a material fact

20   is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the

21   nonmoving party." *Id.*  "[I]n ruling on a motion for summary judgment, the judge must view the

22   evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.  The

23   question is "whether a jury could reasonably find either that the [moving party] proved his case by

24   the quality and quantity of evidence required by the governing law or that he did not." *Id.*  "[A]ll

25   justifiable inferences must be drawn in [the nonmovant's] favor." *United Steelworkers of Am. v.*

26   *Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citation omitted).  This is

27   true where the underlying facts are undisputed as well as where they are in controversy. *Eastman*

28   *Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 541 (1992); *McSherry v. City of Long*

United States District Court
Northern District of California

1    *Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).

2         The moving party must inform the district court of the basis for its motion and identify

3    those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if

4    any, that it contends demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

5    *Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a motion for summary judgment "may not

6    rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific

7    facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Liberty Lobby*,

8    477 U.S. at 250.  The opposing party need not show the issue will be resolved conclusively in its

9    favor.  *Liberty Lobby*, 577 U.S. at 248-49.  All that is necessary is submission of sufficient

10   evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the

11   parties' differing versions at trial.  *Id.*

12   **IV.    ANALYSIS**

13        **A.    Declaratory Relief - First Cause of Action**

14        Under the federal Declaratory Judgment Act, the Court may "declare the rights and other

15   legal relations of any interested party seeking such declaration" for cases of "actual controversy

16   within [the Court's] jurisdiction."  28 U.S.C. § 2201(a). [1]  "To fall within the Act's ambit, the case

17   of actual controversy must be definite and concrete, touching the legal relations of parties having

18   adverse legal interests," and it must be "real and substantial and admi[t] of specific relief through a

19   _____

20        [1]  The parties agree that substantive California law applies in this diversity action.
     However, the parties do not address whether federal or state procedural law governs Columbia's
21   First Cause of Action seeking declaratory relief.  Generally, federal courts sitting in diversity
     apply federal procedural rules.  *See In re Adobe Sys., Inc. Privacy Litig.,* 66 F. Supp. 3d 1197,
22   1219 (N.D. Cal. 2014) (collecting cases and holding, based on the procedural nature of the
     Declaratory Judgment Act, that where declaratory relief is requested in federal court the federal
23   statute applies); *Golden Eagle Insurance Co. v. Travelers Cos.,* 103 F.3d 750, 754 (9th Cir. 1996),
     *overruled on other grounds by Gov't Emps. Ins. Co. v Dizol*, 133 F.3d 1220 (1998) (en banc)
24   (although "[t]he complaint [plaintiff] filed in state court was for declaratory relief under
     California's declaratory relief statute," "[w]hen [defendant] removed the case to federal court,
25   based on diversity of citizenship, the claim remained one for declaratory relief, but the question
     whether to exercise federal jurisdiction to resolve the controversy became a procedural question of
26   federal law").  Accordingly, the Court will analyze Columbia's first cause of action under the
     federal standard.
27

28

United States District Court
Northern District of California

decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (internal citations and quotation marks omitted).

Columbia seeks a declaration that "Federal must reimburse, in whole or in part, Columbia Casualty for its $900,000 settlement payment in the *Perez* Action." Compl. ¶ 15. There is no dispute that this request arises out of an actual, definite and concrete dispute, and thus is an appropriate subject for declaratory relief. However, for the reasons discussed below, the Court finds that Columbia is not entitled to the declaration it seeks. As a result, Federal is entitled to summary judgment as a matter of law.

### 1.     The Federal Policy

The parties agree that the Federal policy is an "excess" policy. *See Wells Fargo Bank, N.A. v. California Ins. Guar. Ass'n,* 38 Cal. App. 4th 936, 940 (1995) (defining "excess" to mean "insurance that begins only after a predetermined amount of underlying coverage is exhausted and that does not broaden the underlying coverage."). The issue in dispute is: "excess to what"? Columbia's request for declaratory relief posits that the Federal policy is excess only to the Fireman's Fund policy, meaning that Federal, not Columbia, is liable for any insurance payments made in the *Perez* settlement in excess of the $1 million paid by Fireman's Fund. Federal, on the other hand, contends that its policy requires exhaustion of *all* underlying primary insurance. Federal Motion ("Federal Mot.") at 12-13.

### a.     Legal Standard

Under California law, "[w]hen determining whether a particular [insurance] policy provides a potential for coverage and a duty to defend, [courts] are guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal. 4th 1, 18, (1995). "The rules governing policy interpretation require [courts] to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id.* Contracts are to be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636. If the contractual language is clear and explicit, it governs. Cal. Civ. Code § 1638. On the other hand, if

the terms of a promise memorialized in an insurance policy are "in any respect ambiguous or uncertain, the terms must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the West v. Superior* Court, 2 Cal. 4th 1254, 1264-65 (1992) (internal quotation marks and citations omitted).

When interpreting a contract, the Court is to consider the "whole of the contract" taken together, "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

### b.    Analysis

The Court turns first to the language of the Federal policy in evaluating the parties' arguments. The relevant sections of the Federal policy indicate that Federal's obligation to pay only accrues when both "underlying limits" and "all other insurance" are exhausted. According to the section of the policy regarding Follow-Form Coverage A (the coverage relevant here), Federal agreed to pay "on behalf of the insured, that part of the loss to which this coverage applies, which exceeds the applicable underlying limits." J.A., Ex. 2 at CCC 000169 (emphasis removed). Underlying limits, in relevant part, are defined by the policy as follows:

Underlying limits means the sum of amounts:

A.    shown for the hazards described in the Schedule of Underlying Insurance, consisting of amounts:

1.    available under applicable underlying insurance; and

2.    any insured must pay because underlying insurance, as represented by [the insured], is not available, regardless of the reason.

J.A., Ex. 2 at CCC000197.

The referenced Schedule of Underlying Insurance, in turn, includes only the Fireman's Fund policy, without listing any other policy. (*See* J.A., Ex. 2 at CCC000164.) For this reason, Columbia contends that the definition of "underlying limits" means that the Federal policy is specifically excess *only* to the Fireman's Fund policy, which was exhausted when Fireman's Fund

1   paid $1 million in settlement costs.  As a result, Columbia argues that Federal should reimburse

2   Columbia the $900,000 it contributed to the *Perez* settlement in excess of Fireman's Fund $1

3   million dollar policy limit.  Col. Mot. at 11.

4         In response, Federal contends that the term "underlying insurance," as defined in its policy,

5   refers not only to the Fireman's Fund policy, but also to other "primary CGL policies that

6   provided coverage for the hazards described in the Schedule [of Underlying Insurance]."  Federal

7   Opposition ("Federal Opp.") at 2.  Federal argues that the "underlying limits" portion of its policy

8   refers to amounts shown for the "hazards" described in the Schedule, rather than amounts shown

9   in "policies" described in the Schedule.  *Id.* at 3.  This subtle difference, Federal contends, drives

10   the conclusion that its obligation to pay under the insurance policy arises only once *every* policy

11   providing coverage for the hazards shown in its Schedule of Underlying Insurance -- not just the

12   Fireman's Fund policy -- has been exhausted.

13         The Court finds the policy's "other insurance" provision dispositive on this point.  It

14   establishes that Federal's obligation to pay is excess of the exhaustion of *all* other insurance, not

15   just the Fireman's Fund policy.  Under that provision:

16

17       If all other valid and collectable insurance is available to the insured for loss [Federal] would otherwise cover under this insurance [Federal's] obligations are limited as follows.

18

19       This insurance is excess over *any other insurance*, whether primary or excess, contingent on any other basis.

20       [Federal] will have no duty to defend the insured against any suit if any provider of any other insurance has a duty to defend such insured against such suit**.**

21

22       [Federal] will pay [its] share of the amount of loss that exceeds the sum total:

23          • amount that *all other insurance* would pay for loss in the absence of this insurance; and
            • of all deductible and self-insured amounts under *all other insurance.*

24       This insurance is not subject to the terms or conditions of *any other insurance*.

25   J.A., Ex. 2 at CCC000189 (emphasis modified from original).  When the Court reads all of

26   the provisions of the entire policy together, as it must, it is clear that Federal's obligation to

27   pay was meant to accrue only after the exhaustion of all other insurance.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Columbia offers two arguments against this conclusion, neither of which the Court finds

2    persuasive.  First, Columbia contends that Federal's "other insurance" clause refers only to

3    "excess" policies like the Federal policy, meaning that the term any "loss that [Federal] would

4    otherwise cover under this agreement" refers only to additional "excess" policies.  Col. Mot. at 5.

5    This argument ignores the explicit statement that the policy is to be "excess over *any* other

6    insurance, whether primary or excess."  J.A., Ex. 2 at CCC000189 (emphasis added).  This

7    language makes it clear that the policy is excess to all other insurance, regardless of type.

8    Second, Columbia argues that because both the Columbia and Federal polices contain

9    functionally identical "other insurance" clauses, the clauses are excess to each other and thus

10   mutually unenforceable.  Col. Mot. at 12-13.  Were Federal and Columbia both primary or both

11   excess insurers, Columbia's argument in this respect might have merit.  But they are not.

12   Undisputedly, Columbia's policy is a primary policy, and Federal's is an excess policy.  In

13   California, a dispute regarding two competing "other insurance" clauses "can only arise between

14   carriers on the same level[;] it cannot arise between excess and primary insurers."  *North*

15   *American Ins. Co. v. American Home Assurance Co.*, 210 Cal. App. 3d 108, 114 (1989).  Thus,

16   nothing precludes the enforceability of the "other insurance" clause in the Federal policy.

17   For all of these reasons, the undisputed facts establish that Federal's policy is excess to all

18   policies, not just to the Fireman's Fund policy.  As a result, the Court DENIES Columbia's motion

19   for summary judgment and GRANTS Federal's motion for summary judgment as to Columbia's

20   First Cause of Action.

21        **B.**        **Equitable Indemnity - Second Cause of Action**

22   "Traditional equitable indemnity . . . is premised on a joint legal obligation to another for

23   damages, but does not invariably follow fault."  *Prince v. Pacific Gas & Elec. Co.*, 45 Cal. 4th

24   1151, 1158 (2009).  In the insurance context, equitable indemnity applies "in cases in which one

25   party pays for a debt for which another is primary liable and which in equity and good conscience

26   should have been paid by the latter party."  *United Services Automobile Assn. v. Alaska Ins. Co.*,

27   94 Cal. App. 4th 638, 644-645 (2001).  As a general rule, "[a] primary insurer is not entitled to

28   indemnification from a third party's excess insurer."  Croskey et al., Cal. Practice Guide:

United States District Court
Northern District of California

1    Insurance Litigation (The Rutter Group 2000) ¶ 9:69.1, p. 9-20 (relying on *Reliance Nat. Indem.*

2    *Co. v. Gen. Star Indem. Co*., 72 Cal. App. 4th 1063 (1999)).  Moreover, contractual

3    indemnification between an insured and a third party does not as a general rule "take[] precedence

4    over the well-established general rules of primary and excess coverage in an action between

5    insurers."  *Reliance*, 72 Cal. App. 4th at 1081.  California courts have consistently rejected the

6    notion that a primary insurer is entitled to equitable indemnification from an excess insurer where

7    the underlying insureds had contracts with one another containing indemnity agreements.  *See e.g.*

8    *JPI Westcoast Const., L.P. v. RJS & Associates, Inc.,* 156 Cal. App. 4th 1448, 1458-1466 and n.3

9    (2007) (primary insurer not entitled to equitable indemnification from excess insurer based on

10    indemnification clause in construction contract between underlying insureds).

11        Columbia argues that because Federal's named insured, Bascom/ CPR/TBG Diamond

12    Ridge, contractually agreed to indemnify and hold harmless Columbia's named insured, Greystar,

13    equity requires Federal to reimburse Columbia for the amounts paid in the *Perez* Action.  *See* J.A.

14    Ex. 4 (Management Agreement between Bascom/CPR/TBG Diamond Ridge and Greystar).  The

15    Court disagrees for two reasons.  First, the indemnification agreements between Greystar and

16    Bascom contained in the Management Agreement were mutual.  J.A. Ex. 4 ¶¶ 4.3 and 4.4.

17    Second, that same agreement clearly states that Greystar's Commercial General Liability

18    insurance (the Columbia policy) would be primary, with Bascom to be named as an additional

19    insured.  *Id.* at 4.1 (c).  Requiring Federal to reimburse Columbia for expenses incurred as a result

20    of being a primary insurer would alter "the basic rules construing primary and excess policies," a

21    result inconsistent with established California law.  *See Reliance,* 72 Cal. App. 4th at 1082-83; *JPI*

22    *Westcoast*, 156 Cal. App. 4th at 1463; *Cont'l Cas. Co.,* 803 F. Supp. 2d at 1222.  For these

23    reasons, the Court finds that Federal is entitled to summary judgment on Columbia's Second

24    Cause of Action as a matter of law.

25        **C.**        **Equitable Contribution – Third Cause of Action**

26        "[T]he right to equitable contribution arises only when all of the insurance carriers share

27    the same level of obligation on the same risk as to the same insured."  *Fireman's Fund Ins. Co. v.*

28    *Commerce & Indus. Ins. Co.,* No. C-98-1060VRW, 2000 WL 1721080, at *3 (N.D. Cal. Nov. 7,

1    2000) (internal quotation marks and citations omitted); *see also Reliance*, 72 Cal. App. 4th at

2    1080.

3            As explained above, Columbia and Federal did not insure at the same level of risk.

4    Columbia is a primary insurer while Federal is an excess insurer.  Federal has no equitable duty to

5    contribute to Columbia's costs in settling the *Perez* Action.  Taking the facts in the light most

6    favorable to Columbia, the non-moving party on this claim, the Court finds that there are no

7    disputed material facts as to the parties' differing levels of obligations to Bascom or Greystar, and

8    Federal is entitled to summary judgment on Columbia's Third Cause of Action as a matter of law.

9            **D.      Equitable Subrogation – Fourth Cause of Action**

10           Equitable subrogation "takes the form of an insurer's right to be put in the position of the

11   insured in order to pursue recovery from third parties legally responsible to the insured for a loss

12   which the insurer has both insured and paid."  *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal

13   App. 4th 1279, 1291-92 (1998).  "The test as to whether the party has the right to maintain the

14   action for subrogation involves a consideration of, and must necessarily depend upon the

15   respective equities of the parties."  *Reliance*, 72 Cal. App. 4th at 1081 (internal quotation marks

16   and citations omitted).  "Thus, an insurer cannot acquire by subrogation anything to which the

17   insured has no rights, and may claim no rights which the insured does not have."  *Id.* (internal

18   citations and quotation marks omitted).

19           In cases in which the party seeking equitable subrogation is a primary insurer and the party

20   from whom equitable subrogation of debt is sought is an excess insurer, courts have consistently

21   found that the equities do not support recovery by the primary insurance carrier.  *See, e.g., id.* at

22   1082-83 (holding that equitable principles prevented recovery by a primary insurer from an excess

23   insurer pursuant to an equitable subrogation theory); *JPI Westcoast*, 156 Cal. App. 4th at 1466

24   (upholding a grant of summary judgment in favor of an excess carrier against a primary carrier

25   asserting equitable subrogation theory); *Cont'l Cas. Co.*, 803 F. Supp.2d at 1120-23 (applying

26   California law and holding that "[t]he terms of an indemnity agreement cannot trump general rules

27   governing the application of primary, as opposed to excess, coverage").

28           As in *Reliance*, here the primary insurance carrier, Columbia, seeks reimbursement from

United States District Court
Northern District of California

10

the excess carrier, Federal, based on an indemnity agreement between the two underlying insureds. For the same reasons articulated in *Reliance*, Columbia is not entitled to recovery by way of equitable subrogation.  In particular, the Court is persuaded by the reasoning in *Reliance* that Columbia, as the primary insurer, bargained for the possibility that it would be called upon to "satisfy a full judgment" in a way that Federal did not, making an obligation by Federal to reimburse Columbia inequitable.  *See Reliance*, 72 Cal. App. 4th at 1082-83.  There, as here, "the risks involved in providing primary coverage are different from those involved in issuing an excess policy." *Id.* at 1082.  Those "differences are reflected in part by the premium costs." *Id.* Unlike a primary insurance carrier like Columbia, an excess insurer like Federal does not "accept premiums with the full knowledge that it will be called upon to satisfy a judgment." *Id.*  Columbia offers nothing to suggest that it calculated its premiums with the understanding that the indemnity agreement between Greystar and Bascom would relieve Columbia of its obligation to pay a settlement amount as required by the terms of its policy.  As a result, equity requires Columbia to pay its portion of the *Perez* settlement amount, which included coverage of Bascom as an additional insured.  The undisputed material facts show that Federal has no obligation to indemnify Columbia for a loss that was covered by Columbia's primary policy with Greystar, and Federal is entitled to summary judgment on Columbia's Fourth Cause of Action for equitable subrogation.

## V.    CONCLUSION

For the foregoing reasons, the Court finds that Federal is entitled to summary judgment on all of Columbia's Causes of Action.  Accordingly, Federal's Motion for Summary Judgment is GRANTED in its entirety, and Columbia's Motion for Summary Judgment is DENIED.


**IT IS SO ORDERED.**

Dated:  8/10/2015


HAYWOOD S. GILLIAM, JR.
United States District Judge